817 So.2d 496 (2002)
Donald R. WALKER
v.
Sylvia Goodman WALKER.
Nos. 01-CA-1202, 01-CA-1203.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2002.
Rehearing Denied June 17, 2002.
*497 Robert L. Raymond, Destrehan, LA, for Appellant Donald R. Walker.
Jeffery M. Lynch, Jefferson, LA, for Appellee Sylvia Goodman Walker.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
Plaintiff, Donald Ray Walker, appeals from the trial court judgment in favor of his divorced wife, Defendant, Sylvia Good-man Walker, ordering that his retirement plan with Union Carbide Corporation (Union Carbide) be partitioned in accordance with the Sims formula.[1] For the reasons which follow, we affirm.
The parties were divorced on July 11, 1989. They previously executed two partition agreements, one on September 28, 1987 and a second on May 12, 1989. Mr. Walker was employed at Union Carbide until his retirement on May 1, 1999. In planning for his retirement, Mr. Walker discovered that in 1996 Mrs. Walker had two Qualified Domestic Relations Orders (QDROs) filed in 1996, one pertaining to his retirement plan with Union Carbide and the other relating to his Personal Investment Account with Union Carbide. Mr. Walker filed suit to have the 1996 QDROs withdrawn and set aside and on August 31, 2000, the trial court rendered judgment setting then aside. Mrs. Walker then filed a Motion to Set Qualified Domestic Relations Order relating to the division of Mr. Walker's pension plan with Union Carbide.[2]
Mr. Walker argued that the pension plan should be divided according to the May 12, 1989 partition agreement. Mrs. *498 Walker does not dispute this. Rather, the dispute is over the interpretation of that partition agreement. The applicable clause, paragraph six, states:
6. DONALD RAY WALKER further agrees to pay to SYLVIA GOOD-MAN WALKER one-half (½) of all of his retirement and pension benefits from Union Carbide Corporation vested prior to June 1, 1989 when due and payable to DONALD RAY WALKER....
Mr. Walker argues that paragraph six means that Mrs. Walker's share of the pension payments should be calculated as of June 1, 1989 and payable when he commences receipt of his benefits. In other words, he argues that she is entitled to no more than what she would have received if Mr. Walker had retired on June 1, 1989.
Mrs. Walker argues, to the contrary, that the intent of the provision was only to provided the date upon which the rights vested, but that the amount was to be calculated at the time of his retirement "when due and payable." She points out that this is how the pension would have been divided as a matter of law, under Sims and, absent the clear expression of a contrary intent, this is the correct way to divide the pension.
The trial court ruled that the retirement plan with Union Carbide should be partitioned in accordance with the Sims formula. In his reasons for judgment, the trial judge found:
Mrs. Walker contends that the intent of this language [paragraph six] was that the Sims formula should be used to calculate her portion of the retirement. While it is certainly true that the parties are free to divide community assets any way they choose and that the parties may choose to contract in a manner different from Sims, it simply is not clear from the above-cited language that that is what the parties intended to do. In fact, the problem as I see it is that the language is so loosely drawn that a plausible argument can be made for either interpretation. Faced with such obtuse language, I find that I must decide this issue based upon the equities of the two positions.
Mrs. Walker's proposed method of calculation adopts a method that has been recognized in our jurisprudence under Sims and its progeny and that is extensively used in partitions of retirement benefits. This method recognizes the fact that the value of the retirement funds are not normally paid out at the time of the partition agreement but will be paid out at some future date. It further recognizes the fact that the value of the retirement will, presumably, continue to increase merely by the passage of time before withdrawal, without the effort of either spouse.
On the other hand, Mr. Walker's proposed method of calculation ignores the fact that the value of invested money will, presumably, increase over time. The effect would be to freeze, or stagnate, the value of Mrs. Walker's benefit to its 1989 value, regardless of how many years might pass before Mr. Walker's retirement. I cannot imagine that Mrs. Walker or her counsel would have entered into such an agreement if the value of her portion of the retirement were being frozen in place. Furthermore, I find that utilization of this method would be grossly inequitable to Mrs. Walker, whereas utilization of the Sims formula is not grossly inequitable to Mr. Walker. Judgment will therefore be rendered ordering division of Mr. Walker's retirement in accordance with the Sims formula.
We agree with the trial court's reasoning. We likewise find that the language used in paragraph six of the community *499 partition agreement is not clear and explicit. Therefore, the parties' intent is difficult to discern. Had Mr. Walker intended to limit Mrs. Walker's pension entitlement in the manner argued, which is contrary to that provided by law, he could have easily done so by expressly stating that the calculation of benefits would be made on June 1, 1989. That is not what was provided.
La. C.C. art. 2053 provides that "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." Further, La. C.C. art. 2055 provides that "[e]quity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another."
In reviewing this case, we find, as did the trial court, that Mr. Walker's interpretation would give him an unfair advantage over Mrs. Walker in the division of the Union Carbide pension. The community property partition was executed in 1989 and Mr. Walker did not retire until 1999. Increases in the value of the pension occurred over that ten year period and we find nothing in the agreement to indicate Mrs. Walker's intent to forego her share of those increases.
To the contrary, in looking at the other provisions of the contract we find that Mrs. Walker was mindful of not tying herself to 1989 values. For example, the agreement regarding alimony was not set at a specified amount but was set "at the rate of FIFTEEN PERCENT (15%) of DONALD RAY WALKER'S gross monthly income from any and all sources of earned income from employment that he receives." This provision allowed for inflationary or cost of living increases naturally occurring over time. We see nothing to indicate that Mrs. Walker did not have the same view or intent regarding the pension, that is, that she was entitled to her share of any naturally occurring increases in the value of her portion.
We also note that in the community property partition executed by the parties in 1987, there was no mention of a date. Rather, it provided simply that "DONALD RAY WALKER further agrees to pay to SYLVIA GOODMAN WALKER one-half ( ½) of all of his retirement and pension benefits when due and payable to DONALD RAY WALKER ..." This provision would certainly intend a Sims formula partition. The only difference in the 1989 agreement was the addition of the June 1, 1989 date, but it still included the "when due and payable" language. We note that the partition agreement was executed on May 12, 1989. Therefore, the June 1, 1989 date could have been intended as nothing more than a cut off date different from the date of execution of the agreement.
Based on the foregoing, we find that paragraph six of the 1989 community property partition agreement, relating to the division of Mr. Walker's retirement and pension rights in his Union Carbide plan, is ambiguous and, thus, our interpretation of the provision in the light of the nature of the contract, equity, usage, conduct of the parties and other contracts leads us to the conclusion that the trial court was correct in ordering that the pension be divided according to the Sims formula.
Accordingly, the judgment of the trial court ordering that the retirement plan of Mr. Walker with Union Carbide be partitioned in accordance with the Sims formula is affirmed. Costs of appeal are assessed against Mr. Walker.
AFFIRMED.
DUFRESNE and EDWARDS, JJ., dissent.
*500 DUFRESNE, J., dissenting.
I respectfully dissent from the majority opinion.
I find that the language used in paragraph six of the community partition agreement indicates the intent of the parties, which was to calculate the division of the Union Carbide Corporation retirement, in a manner different than the Sims formula.
Accordingly, I would reverse the judgment of the trial court and remand so that the trial judge can review the entire community settlement and take testimony to determine the intent of the parties in the May 12, 1989 partition agreement as it pertained to the Union Carbide retirement benefits.
EDWARDS, J., dissenting.
I respectfully dissent from the majority opinion for the reasons expressed by Judge Dufresne.
NOTES
[1] Sims v. Sims, 358 So.2d 919 (La.1978). There were other issues resolved in the judgment, but this is the only issue raised on appeal.
[2] The pleading also addressed other claims, none of which are being appealed or are relevant to the pension issue which is the sole issue presented in this appeal.